UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANTONIO D. HOLLINGSWORTH,

               Petitioner,

v.                                                                Civil No. 20-cv-13242

                                           Honorable Mark A. Goldsmith
                                           United States District Judge

MICHELLE FLOYD,

               Respondent.

_____/


**OPINION AND ORDER
(1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS (Dkts. 1, 8);
(2) DENYING A CERTIFICATE OF APPEALABILITY; AND (3)
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner

Antonio D. Hollingsworth ("Petitioner") was convicted of armed robbery, Mich. Comp. L. §

750.529, following a bench trial in the Wayne County Circuit Court.[1] The trial court initially

sentenced Petitioner to 12 to 20 years' imprisonment. He was later resentenced to 11 to 20 years'

imprisonment. In his habeas petition, Petitioner raises claims concerning prosecutorial

misconduct, great weight and sufficiency of the evidence, evidentiary error, ineffective assistance

of trial counsel, and the trial court's findings of fact. Am. Pet. (Dkt. 8). Respondent has filed an

---

[1] Petitioner was recently released on supervised parole. See Michigan Department of
Corrections, Offender Tracking Information System,
<https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=675148> (last accessed
February 15, 2024). Although Petitioner has been released from prison, his case is not moot.
"Individuals subject to post-release control, like individuals subject to supervised release in the
federal system, satisfy the 'in custody' requirement." In re Stansell, 828 F.3d 412, 416 (6th Cir.
2016). Because Petitioner remains on supervised release, he is thus "in custody" for purposes of
habeas review.

answer to the habeas petition contending that it should be denied.  For the reasons set forth, the Court concludes that Petitioner is not entitled to relief on his claims and that the habeas petition must be denied.  The Court also concludes that a certificate of appealability and leave to proceed in forma pauperis on appeal must be denied.

## I.   BACKGROUND

In 2009, Petitioner robbed a 7-11 convenience store in Romulus, Michigan.  Petitioner pointed a handgun at the store clerk, who then turned over the contents of the register.  The following facts as recited by the Michigan Court of Appeals are presumed correct on habeas review.  Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009); 28 U.S.C. § 2254(e)(1).

> In the early morning hours of April 12, 2009, a man entered a 7-11 store in Romulus. The store's cashier testified that the man, who was wearing a mask and hat, pointed a handgun at her and ordered her to hand over the contents of the cash register. The man then fled behind the store, where there exists a park. Officers arrived shortly after the robbery, and placed a tracking dog in this area. The dog picked up a scent trail and followed it until it ended at a bicycle tire track on the ground. Along the trail, officers discovered several items of clothing, including a baseball cap and what was described by the officers as a "neck scarf" or "face mask." In 2013, these items were tested for DNA. The analysis returned a match to defendant's DNA.

> At trial, defendant admitted that the hat and neck scarf belonged to him. He claimed that he had a habit of leaving items behind in various places, and suggested that he simply lost these items at some unknown point in time. He claimed the other items of clothing that were found did not belong to him. The trial court found that defendant's story was not credible, and based on the fact that the discarded hat and neck scarf had been worn by defendant, concluded that he was the man who robbed the 7-11. Defendant now appeals.

People v. Hollingsworth at PageID.324 (Dkt. 13-10).

Following his conviction and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning evidentiary errors, the conduct of the prosecutor, great weight of the evidence, the effectiveness of trial counsel, and the validity of his

2

sentences.  Petitioner also filed a pro se Standard 4 Brief, raising additional claims concerning ineffective assistance of counsel, sufficiency of the evidence, prosecutorial misconduct, and factual error by the trial court.  The Michigan Court of Appeals denied relief on those claims and affirmed his conviction but remanded to resolve his sentencing claim concerning his presentence investigation report.  Id. at PageID.331.  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  People v. Hollingsworth, 898 N.W.2d 225 (Mich. 2017).

On remand, Petitioner filed a motion for resentencing, particularly as it pertained to the scoring of certain prior record variables.[2]  See Dkt. 13-8.  The trial court declined to resentence Petitioner.  Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, which was granted.  On remand, the trial court resentenced Petitioner to 11 to 20 years' imprisonment.  See Dkt. 13-9 at PageID.320.  The Michigan Court of Appeals affirmed Petitioner's new sentence in an unpublished opinion.  People v. Hollingsworth, No. 346041, 2020 WL 359651, at *1 (Mich. Ct. App. Jan. 21, 2020).  Petitioner did not appeal to the Michigan Supreme Court or the United States Supreme Court, nor did he seek further collateral review before the trial court.

On November 30, 2020, Petitioner filed a letter with this Court requesting a stay for additional time to file a habeas petition (Dkt. 1).  The Court directed Petitioner to file a habeas corpus petition and renewed motion to stay by April 15, 2021.  See Dkt. 7.  On April 7, 2021, Petitioner filed a renewed request for a stay and the instant petition raising the following claims:

---

[2] Petitioner does not bring a sentencing claim on habeas review.  For that reason, the Court will not discuss in detail his state court appeals addressing the sentencing claims.

I.    The prosecution committed a <u>Brady</u> violation by not giving the defense a DNA report.

II.   The prosecution failed to present sufficient identification evidence.

III.  The prosecution failed to satisfy the four-condition precedent foundation that must be laid before dog tracking evidence is admissible.

IV.   Ineffective assistance of counsel for failure to obtain DNA report and proof of Petitioner's address. Trial counsel was also ineffective for failing to object to erroneously admitted dog tracking evidence.

V.    The trial court unreasonably determined the facts.

VI.   The prosecution committed misconduct by withholding a report from defense and not testing all of the evidence.

VII.  Petitioner's conviction was against the great weight of the evidence and/or the evidence was insufficient to support the conviction.

Am. Pet. at PageID.24–35.

The Court denied Petitioner's request to stay the case and directed Respondent to file an answer to the amended petition.  Respondent has filed an answer to the habeas petition contending that it should be denied because the petition is untimely, some of the claims are waived and/or procedurally defaulted, and all of the claims lack merit.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 <u>et seq.</u>, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.  The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent'" Mitchell v. Esparza, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405–406 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413); see also Bell, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520–521 ; see also Williams, 529 U.S. at 409.  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' Lindh v. Murphy, 521 U.S. 320, 333 n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)." Renico v. Lett, 559 U.S. 766, 773 (2010).

Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Harrington v. Richter, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103; see also White v. Woodall, 572 U.S. 415, 419–420 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. Woods v. Etherton, 578 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. Williams, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting Wright v. Van Patten, 552 U.S. 120, 125–126 (2008) (per curiam)); Lockyer, 538 U.S. at 71–72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision

6

can be deemed to have been 'adjudicated on the merits.'" Harrington, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (emphasis in original); see also Mitchell, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute clearly established Federal law as determined by the Supreme Court" and it cannot provide the basis for federal habeas relief. Parker v. Matthews, 567 U.S. 37, 48–49 (2012) (per curiam); see also Lopez v. Smith, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in "assessing the reasonableness of the state court's resolution of an issue." Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003)); Dickens v. Jones, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

### III. DISCUSSION

#### A. Statute of Limitations, Waiver, Exhaustion, Procedural Default

As an initial matter, Respondent contends that Petitioner's habeas petition is untimely and that several of his claims are waived, unexhausted, and/or barred by procedural default. The Court declines to address such defenses. "[A] claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule." Lovins v. Parker, 712 F.3d 283, 295 (6th Cir. 2013). A procedural default ordinarily is not a jurisdictional matter. Johnson v. Lee, 578 U.S. 605, 610 (2016) (quoting Trest v. Cain, 522 U.S. 87, 89 (1997)). A court may bypass a procedural-default question if the claim is easily resolvable against the habeas petitioner. Lambrix v. Singletary, 520 U.S. 518, 525 (1997). The statute of limitations is also not a jurisdictional bar.

See <u>Smith v. State of Ohio Dept. of Rehabilitation</u>, 463 F. 3d 426, 429 n.2 (6th Cir. 2006).  Because

of the complexities involved with resolving the timeliness and waiver/procedural default issues, it

appears to be easier and more judicially efficient to adjudicate Petitioner's claims on the merits.

The Court, therefore, will proceed to address the merits of the habeas petition.

### B.    Merits

### 1.    Prosecutorial Misconduct

In his first and sixth claims, Petitioner asserts that the prosecution deprived him of a fair

trial by withholding a DNA report in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  He also

claims that the prosecution denied him a fair trial by refusing to test all of the clothing items for

DNA, which he claims would have shown that the other items did not belong to him.  The Michigan

Court of Appeals rejected these arguments on direct appeal:

> A *Brady* violation occurs when the prosecution suppresses evidence that is
> material and favorable to the accused.  *People v Chenault*, 495 Mich 142,
> 150; 845 NW2d 731 (2014). Defendant argues that the prosecutor committed
> a *Brady* violation by failing to disclose to defendant DNA analysis of shirts
> and sweatpants found by the dog.  Defendant further claims that such evidence
> was exculpatory because DNA on these items did not match his own.  There is no
> indication, however, that a DNA analysis was ever performed on these items.
> Rather, the laboratory report shows that only the hat and neck scarf were analyzed.
> Defendant's claim that testing was performed on the other items of clothing and
> was exculpatory has absolutely no factual basis.  Defendant has not shown that
> the prosecution suppressed any material evidence, much less evidence that was
> exculpatory.
>
> *             *             *
>
> Defendant next argues that the prosecutor violated the rule of *Hurd v People*, 25
> Mich 405 (1872), superseded by statute as recognized in *People v Koonce*, 466
> Mich 515, 518-521; 648 NW2d 153 (2002), by failing to have the items of clothing
> other than the hat and neck scarf tested for DNA. *Hurd* held that "the prosecution
> can never, in a criminal case, properly claim a conviction upon evidence which,
> expressly or by implication, shows but a part of the res gestae, or whole transaction,
> if it appear[s] that the evidence of the rest of the transaction is attainable." *Hurd*,
> 25 Mich at 415. But as recognized in *Koonce*, this general res gestae rule is no

8

longer in effect. *Koonce*, 466 Mich at 518, 520. Accordingly, defendant's argument lacks merit.

People v. Hollingsworth at PageID.329–330.

The Michigan Court of Appeals' ruling is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004) (citing Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003)). The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." Berger v. United States, 295 U.S. 78, 88 (1935). Prosecutorial misconduct can only form the basis for habeas relief if the conduct was so egregious that it rendered the entire trial fundamentally unfair based on the totality of the circumstances. Donnelly v. DeChristoforo, 416 U.S. 637, 643–645 (1974)). To obtain relief, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker v. Matthews, 567 U.S. 37, 48 (2012) (quoting Harrington, 562 U.S. at 103); see also Stewart v. Trierweiler, 867 F.3d 633, 639 (6th Cir. 2017) (describing the standard for prosecutorial misconduct habeas claims as a "high bar").

Further, it is well-established that a prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87 (1963). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. United States v. Bagley, 473 U.S. 667, 676–677 (1985). To find a Brady violation, the suppressed evidence must be material and favorable to the accused. Elmore v. Foltz, 768 F.2d

9

773, 777 (6th Cir. 1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Bagley</u>, 473 U.S. at 682.

A <u>Brady</u> violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by the prior non-disclosure. <u>United States v. Word</u>, 806 F.2d 658, 665 (6th Cir. 1986). Thus, to establish a <u>Brady</u> violation, a petitioner must show that: (i) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (ii) the evidence was favorable or exculpatory; and (iii) the evidence was material to the question of guilt. <u>Carter v. Bell</u>, 218 F.3d 581, 601 (6th Cir. 2000).

First, the state-court record belies Petitioner's <u>Brady</u> violation claim. Petitioner asserts that the prosecution never provided the defense with any DNA report and that Petitioner did not learn about the DNA report until appellate counsel acquired it on appeal. This is not true. During trial, the parties stipulated to the admission of the DNA report. 1/16/15 Trial Tr. at PageID.227 (Dkt. 13-4). Thus, the record shows that the DNA report was at minimum disclosed during trial and defense counsel agreed to its admission. Moreover, an email attached to Petitioner's reply directly refutes his claim: in November 2017, appellate counsel emailed trial counsel regarding whether any DNA reports were received. <u>See</u> Email from Rene Cooper, Am. to Pet. at PageID.930 (Dkt. 15). Trial counsel responded, "I am sure we had the reports because I knew about the DNA being on the cap." <u>Id.</u> To the extent that Petitioner argues that any other reports were suppressed, the record is devoid of any evidence that the prosecution suppressed any DNA report.

Second, Petitioner fails to show that the prosecution committed misconduct by failing to test all articles of clothing for DNA evidence. A prosecutor does not have an affirmative duty to take action to discover information which it does not possess or to investigate information which

might be favorable to the defense.  Goff v. Bagley, 601 F.3d 445, 476 (6th Cir. 2010).  Here, five

articles of clothing were found near the scene of the armed robbery: sweatpants, a navy t-shirt, a

black tank top, a neck scarf, and a black ballcap.  1/16/15 Trial Tr. at PageID.221–223.  The store

clerk testified that the suspect was wearing a dark-colored baseball cap, a mask, dark neutral-

colored pants, and multiple shirts.  Id. at PageID.195–196.  The prosecution tested the hat and the

neck scarf, which matched Petitioner's DNA.  Id. at PageID.228.  The state-court record shows

that the other items remained available for testing.  Laboratory Rep., Am. to Pet. at PageID.932.

If Petitioner wanted to test these additional items prior to trial, he certainly could have done so.

For these reasons, Petitioner is not entitled to habeas relief on this claim.

### 2.  Great Weight, Sufficiency of the Evidence, Factual Findings

Petitioner argues that the verdict is against the great weight of the evidence, the trial court

convicted Petitioner based on insufficient evidence, and the trial court erred in its factual findings

under the Michigan Court Rules.  The Michigan Court of Appeals rejected each of these arguments

on direct appeal.   Because these claims are related, the Court will discuss them together.

Petitioner's first argument that his verdict is against the great weight of the evidence does

not state a federal constitutional claim.  Under Michigan law, a trial court may order a new trial

"where the evidence preponderates heavily against the verdict and a serious miscarriage of justice

would otherwise result."  People v. Lemmon, 576 N.W.2d 129, 137 (Mich. 1998) (punctuation

modified).  The grant of a new trial under these circumstances is distinct from the due process

issues raised by insufficient evidence, and "does not implicate issues of a constitutional

magnitude."  Id. at 133 n. 8.  A great weight of the evidence claim alleges an error of state law,

which is not cognizable on habeas review.  Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (holding

that "federal habeas corpus relief does not lie for errors of state law"); Threatt v. Harry, No. 18-

1709, 2018 WL 6721774, *2 (6th Cir. Oct. 10, 2018) (holding that a claim that a conviction is against the great weight of the evidence does not present a federal constitutional question).

But a sufficiency of the evidence claim is cognizable on habeas review. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis omitted). The Jackson standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n.16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence must survive two layers of deference to groups who might view facts differently than a reviewing court on habeas review—the factfinder at trial and the state court on appellate review—as long as those determinations are reasonable. Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." Matthews, 319 F.3d at 788–789.

12

When addressing a sufficiency of evidence challenge, the reviewing court must give circumstantial evidence the same weight as direct evidence.  See United States v. Farley, 2 F.3d 645, 650 (6th Cir. 1993).  "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt."  United States v. Kelley, 461 F.3d 817, 825 (6th Cir. 2006) (punctuation modified); see also Saxton v. Sheets, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence.").  Moreover, "'[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003) (quoting Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508 n.17 (1957)); see also Holland v. United States, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

Under Michigan law, the elements of armed robbery are that the defendant: (i) in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (ii) in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.  People v. Chambers, 742 N.W.2d 610, 614 (2007); Mich. Comp. L. §§ 750.529, 750.530.  Michigan law defines larceny as "(a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property."  People v. March, 886 N.W.2d 396, 404 (2016).  The phrase "'in the course of committing a larceny' includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in

13

flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property."  Mich. Comp. L. § 750.530(2).

The Michigan Court of Appeals held that the prosecution presented sufficient evidence to convict Petitioner of armed robbery.  In reaching this conclusion, the court stated that:

> Defendant claims that the evidence was not sufficient to support the trial court's conclusion that he was the robber. Like any other element of a crime, identity may be established by circumstantial evidence and reasonable inferences drawn from that evidence. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Here, items of clothing matching those worn by the robber were found behind the 7-11 shortly after the robbery. DNA testing on the scarf and hat returned a match with defendant. Defendant also admitted that he owned these items. From this evidence, the trial court could reasonably infer that defendant was the robber. Defendant's argument lacks merit.

People v. Hollingsworth at PageID.331.

The Michigan Court of Appeals faithfully applied federal law, and its decision was not an unreasonable determination of the facts.  The store clerk testified that in the early morning hours, an individual whom she believed to be a man wearing a dark baseball cap, dark neutral clothing, and ski mask walked into the 7-11 store, pointed a gun at her, and gestured toward the register. 1/16/15 Trial Tr. at PageID.195.  The clerk then removed the contents of the cash register and handed them to the man.  Id. at PageID.198.  The police arrived shortly after and initiated a canine search.  Id. at PageID.216.  When asked about the canine tracking, Hays testified that the dog picks up "the freshest track" such as "[s]cales of the skin coming off the body, or crushed vegetation on the ground."  Id. at PageID.217.  Officer Allen Hays testified that his dog picked up a track, which led police to discarded articles of clothing located in an open field behind the store.  Id. at PageID.219–220.  The police found a pair of sweatpants, a black hat with a "D" on it, a neck scarf, a face mask, and a piece of cardboard wrapped in a black tank top.  Id. at PageID.220.  The hat and the neck scarf were tested and matched with Petitioner's DNA.  Id. at PageID.228.  Although

14

there was some question regarding whether lettering or logo on the hat was the same as seen by the store clerk, the hat found matched the description of the hat worn in the video surveillance shown at trial.  Petitioner also testified that the hat and neck scarf belonged to him, but that he had lost these items because he sometimes loses his clothes.  Id. at PageID.241.

All of this evidence strongly suggests that Petitioner robbed the 7-11 store.  When considering the proximity of where the clothing items were found in relation to the store, the timeliness of the canine search, and Petitioner's DNA found on the clothing items worn during the robbery, a rational trier of fact could have found beyond a reasonable doubt that Petitioner committed the charged crime.  To the extent that Petitioner takes issue with any inconsistencies in the store clerk's testimony regarding her description of the clothing items worn, it is the role of the trial judge to "resolve any conflicts in testimony."  Matthews, 319 F.3d at 788.  It is not this Court's role to reweigh the evidence presented.  Based on the state-court record, there was sufficient evidence to support the conviction.

Petitioner also challenges the trial court's evaluation of the evidence presented at his bench trial.  It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'"  Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  While state law requires a trial court to make detailed factual findings following a bench trial, see Mich. Ct. R. 6.403, there is no such federal constitutional requirement.  Therefore, the trial judge's allegedly incorrect findings of fact at the bench trial cannot support a claim for habeas relief because there is no Supreme Court decision that requires a trial court judge to make specific findings of fact at a bench trial in order to satisfy constitutional concerns.  See Wofford v. Straub, 27 F. App'x 517, 520 (6th Cir. 2001).

Habeas relief is not warranted on this claim of insufficient evidence.

15

### 3.   Evidentiary Issue

Next, Petitioner argues that the prosecutor failed to lay a proper foundation for the admission of tracking-dog evidence.  The Michigan Court of Appeals rejected this argument, concluding that the foundational requirements were properly established and that the trial court did not err by admitting the evidence.  People v. Hollingsworth at PageID.326.

Petitioner's state-law evidentiary claim does not entitle him to habeas relief.  The question of whether the trial court properly admitted the tracking-dog evidence is purely an issue of state law and is not cognizable in habeas proceedings.  As discussed, alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief.  See Estelle, 502 U.S. at 67–68; Pulley v. Harris, 465 U.S. 37, 41 (1984).  "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." Kelly v. Withrow, 25 F.3d 363, 370 (6th Cir. 1994) (citing Logan v. Marshall, 680 F.2d 1121, 1123 (6th Cir. 1982)).  A state-court evidentiary ruling cannot rise to the level of a due process violation unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000); accord Coleman v. Mitchell, 268 F.3d 417, 439 (6th Cir. 2001); Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir.2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters. Seymour, 224 F.3d at 552.

Further, under the AEDPA, the Court may not grant relief if it would have decided the evidentiary question differently.  The Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court

on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. Sanders v. Freeman, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner does not assert that the admission of the tracking-dog evidence infringed upon any of his rights under the Constitution or conflicted with a decision by the Supreme Court. He merely argues that the evidence was not admissible under state law. Thus, his claim regarding the admission of the tracking-dog evidence is purely an issue of state law and is not a basis for habeas relief.

### 4.      Ineffective Assistance of Trial Counsel

Finally, Petitioner argues that trial counsel provided ineffective assistance by failing to obtain a DNA report, object to the tracking-dog evidence, and investigate Petitioner's address to prove that he lived behind the 7-11 store. The Michigan Court of Appeals rejected each of these arguments.

> Defendant first contends that counsel was ineffective for failing to investigate his address. Specifically, he contends that counsel should have obtained a credit report showing his address as being on Rodeo Drive in Romulus, and then used this credit report to refresh defendant's memory when on cross-examination, defendant was unable to remember the address or street he lived on during the time he claimed to live in the trailer park. Defendant argues that doing so would have bolstered his story, causing the trial court to believe that the items containing defendant's DNA had simply been left behind on some unknown date and were not connected to the crime. Assuming, arguendo, that counsel should have investigated this issue, defendant cannot show that had counsel done so, a different result was reasonably probable. Beyond the fact that defendant could not remember his address, the entire premise of his story – that he habitually left items of clothing scattered around the area – was difficult to believe. Moreover, it would seem incredibly unlikely that defendant just happened to leave the precise items matching those used in the robbery behind in the park.

> Further, defendant's inability to remember his address occurred while the prosecutor was questioning him. Defense counsel could not have refreshed defendant's memory at this point because he was not questioning defendant. At

17

best, counsel could have attempted to do so on redirect examination. But by then, the damage was done; it was already shown that defendant could not recall his address without prompting. And in any event, the fact of whether defendant did or did not live in the trailer park was never cited by the trial court in its decision, and thus, does not appear to have had any effect on the verdict. Defendant cannot show that had counsel investigated the matter, a different result was reasonably probable.

Defendant contends that counsel should have subpoenaed records showing whose DNA was on the sweatpants and shirts recovered from the park, apparently believing that this evidence would have shown that others wore the clothing. However, there is no indication that the records defendant argues should have been subpoenaed exist, much less that such records would have exonerated defendant. Defendant's claim is without merit.

Defendant contends that counsel should have argued that the presence of the sweatpants and shirts contaminated the area so as to preclude the admission of tracking-dog evidence. While these items were not tested for DNA, it seems fairly obvious that these items were discarded along with the hat and neck scarf. As such, they did not contaminate the area; quite the contrary, they created part of the scent trail followed by the dog. Had counsel raised such an argument, it would have failed. Counsel is not ineffective for failing to raise a futile objection. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). On a similar note, defendant seems to argue that, as a general matter, counsel was ineffective for failing to challenge the admission of tracking-dog evidence. As discussed, a sufficient foundation was laid to support admission of the evidence. Again, counsel is not ineffective for failing to raise a futile objection. *Id.*

People v. Hollingsworth at PageID.328–329.

The Michigan Court of Appeals' ruling is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. Claims of ineffective assistance of counsel are subject to the two-prong standard of Strickland v. Washington, 466 U.S. 668 (1984). Strickland asks: (i) whether counsel was deficient in representing the defendant; and (ii) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. See id. at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial

18

strategy." Id. at 688–689 (punctuation modified).  The "prejudice" component of a Strickland

claim "focuses on the question whether counsel's deficient performance renders the result of the

trial unreliable or the proceeding fundamentally unfair."  Lockhart v. Fretwell, 506 U.S. 364, 372

(1993).  Prejudice, under Strickland, requires showing that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694.

First, Petitioner's claim that trial counsel never obtained a copy of the DNA report belies

the state-court record.  As discussed, trial counsel stipulated to the admission of the DNA report

during trial.  It is clear from the record that trial counsel had access to the DNA report.  To the

extent that Petitioner claims trial counsel should have obtained additional DNA records or

conducted additional DNA testing, he fails to sufficiently explain how such records or testing

would have changed the outcome of his trial.  See Wyniemko v. Smith, No. 99–71560, 2000 WL

760704, at *4 (E.D. Mich. May 10, 2000) ("Conclusory allegations of ineffective assistance of

counsel, without explanation or factual support, are insufficient to establish a constitutional

issue.").  For these reasons, Petitioner's argument lacks merit.

Second, Petitioner's argument that trial counsel failed to object to the tracking-dog

evidence lacks merit.  When the prosecutor initially admitted testimony about the canine search,

trial counsel objected on the basis that the prosecutor failed to lay a proper foundation.  1/16/15

Trial Tr. at PageID.212.  In response, the prosecutor called the appropriate witness to testify about

how the tracking activities were performed and the dog's training and experience.  The Michigan

Court of Appeals ruled that the tracking-dog evidence was properly admitted during trial.  People

v. Hollingsworth at PageID.326.  Accordingly, any objection made by trial counsel would have

been futile.  Attorneys do not provide constitutionally ineffective assistance for electing not to take

futile actions, Richardson v. Palmer, 941 F.3d 838, 857 (6th Cir. 2019) (citing Harris v. United States, 204 F.3d 681, 683 (6th Cir. 2000)), or for "failing to raise . . . meritless arguments," Mapes v. Coyle, 171 F.3d 408, 427 (6th Cir. 1999); see also Downs v. United States, 879 F.3d 688, 691 (6th Cir. 2018); Kelly v. Lazaroff, 846 F.3d 819, 831 (6th Cir. 2017). Petitioner fails to establish an ineffective-assistance-of-counsel claim on this basis.

Lastly, Petitioner fails to show that trial counsel provided ineffective assistance by failing to obtain his residential address. Petitioner testified that he lived in the trailer park behind the 7-11 store, which he testified explained why he often left clothing items in that area. 1/16/15 Trial Tr. at PageID.239–241. However, when the prosecutor questioned him about his address, he could not remember it. Id. at PageID.243. He claims that had trial counsel obtained a record of his address, counsel could have used it to refresh his recollection on re-direct examination and bolster the credibility of his defense. Even accepting Petitioner's argument as true, he fails to show that obtaining his address would have affected the outcome of the trial. The trial court did not consider the location of Petitioner's residence in its decision. Thus, whether Petitioner lived behind the 7-11 was immaterial to his guilty verdict. Because Petitioner cannot show that he was prejudiced by trial counsel's actions, he is not entitled to habeas relief.

## V.    CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.

Accordingly, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus. Before Petitioner may appeal, a certificate of appealability ("COA") must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a

federal district court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claims debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484–485 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  In this case, Brown fails to make a substantial showing of the denial of a constitutional right as to his habeas claims.  Accordingly, the Court denies a COA.

Lastly, the Court concludes that an appeal cannot be taken in good faith.  See Fed. R. App. P. 24(a).  Accordingly, the Court denies leave to proceed in forma pauperis on appeal.

IT IS SO ORDERED.

Dated:  March 20, 2024                              s/Mark A. Goldsmith
      Detroit, Michigan                          MARK A. GOLDSMITH
                                           United States District Judge